[No. D005948. Fourth Dist., Div. One. May 6, 1987.]

LEROY CHRISMAN et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
GENERAL ACCIDENT INSURANCE COMPANY, Real Party in
Interest.

---

COUNSEL

Sachse, James, Croswell & Lopardo and Kevin J. Croswell for Petitioners.

No appearance for Respondent.

Newell & Balestreri, Thomas A. Balestreri, Jr., and David K. Silverberg for Real Party in Interest.

---

OPINION

**WORK, Acting P. J.**—We grant Leroy and Joseph Chrisman's petition for a writ of prohibition and mandate to prohibit the superior court from requiring a de novo trial of their underinsured motorist claim and to direct

the court to confirm an arbitration award obtained on the underinsured motorist claim against their insurer General Accident Insurance Company (General). We hold the state's statutory scheme guarantees insureds who incur damages from *under*insured motorists the same binding arbitration rights as those available to *un*insured motorists pursuant to Insurance Code[1] section 11580.2 and issue the writ.

## I

On February 10, 1985, Joseph Chrisman was involved in an auto collision while insured with General under a policy obtained by his father Leroy. Joseph settled with the other driver to the collision for the policy limits of $50,000. The Chrismans then filed a claim with General for the difference between the $50,000 received and the actual amount of damages, up to the $100,000 limit of their policy. This issue was arbitrated and the arbitrator found General owed $60,000. General then filed an action seeking a de novo hearing on the issue before the superior court or, at minimum, to have the award reduced to the $50,000 maximum recovery possible under its policy. The Chrismans moved to dismiss General's action and petitioned for confirmation of the arbitration award. The motion and the petition to confirm the arbitration award were heard simultaneously and denied.

## II

The underlying dispute is whether a provision in General's policy making an underinsured arbitration award reviewable in court conflicts with section 11580.2, which regulates uninsured and underinsured insurance practices.

General's policy provides:

"ARBITRATION

"If we and a covered person do not agree:

"1.  Whether that person is legally entitled to recover damages under this endorsement; or

"2.  As to the amount of damages;

"either party may make a written demand for arbitration. . . .

---

[1] All statutory references are to the Insurance Code unless otherwise specified.

". . . . . . . . . . . . . . . . .

" . . . [An arbitration] decision . . . will be binding as to:

"1.   Whether the covered person is legally entitled to recover damages; and

"2.   The amount of damages. *This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state* in which your covered auto is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding." (Italics added.)

Based upon this policy provision, General sought judicial review (through declaratory relief) of the underinsured motorist claim because the award exceeded the state-required $15,000 minimum. The Chrismans argue the provision is void as inconsistent with section 11580.2, subdivision (f), which states in part: "The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration."

### III

An arbitration decision is not reviewable de novo by a trial court. (Code Civ. Proc., § 1286.2.) As a result, General's policy conflicts with the statute if subdivision (f) applies to underinsured claims.[2] General, however, claims section 11580.2, subdivision (f), only applies to *un*insured motor vehicle coverage and in the absence of a specific arbitration agreement in the insurance contract, the Chrismans' only remedy for *under*insured coverage disputes would be in the judicial system.

General does not dispute that arbitration, pursuant to the statute, would be binding except for review permitted by Code of Civil Procedure section 1286. In an adhesive portion of its insurance contract, General purports to make arbitration subject to a trial de novo if the award against it exceeds $15,000. Although General argues the de novo condition is mutually advan-

---

[2]Since the arbitration clause is severable from the balance of the policy, without effect on the major object of the policy, the arbitration clause, insofar as it conflicts with the statute, may be stricken. (See Civ. Code, § 1599.)

tageous since it is available both to the insured and to General, the potential advantage to an insured who has obtained an arbitration award in excess of minimum insurance requirements appears remote compared to its utility to the insurer. Although we believe General's argument is unpersuasive, we do not address it further because we find the legislation here expressly requires binding arbitration of both uninsured and underinsured claims. Section 11580.2 makes no distinction between *un*insured awards (which General concedes are binding) and *under*insured awards. Further, the insurance policy provision denying finality only to underinsured awards which are greater than $15,000 thwarts the statutory benefits of finality and avoidance of costly time consuming judicial involvement in attempting to recover benefits from one's own insurer.

Citing cases addressing different circumstances and issues and section 11580.2, subdivisions (b) and (p)(2), General argues "uninsured" and "underinsured" generally have different meanings. However, for our purposes, section 11580.2, subdivision (b) contextually states in part the Legislature's meaning of the terms: "As used in this section, the term 'uninsured motor vehicle' means a motor vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident, . . . or an 'underinsured motor vehicle' as defined in subdivision (p), . . ."

Section 11580.2, subdivision (n) states in part: "For the purposes of this section, uninsured and underinsured motorist coverage shall be offered *as a single coverage*." (Italics added.) Section 11580.2, subdivision (p) relates specifically to underinsured motorist coverage, providing in part: "If the provisions of this subdivision conflict with subdivisions (a) through (o), the provisions of this subdivision shall prevail." Thus, where there is no conflict between subdivision (p) and subdivisions (a) through (o), the provisions of subdivisions (a) through (o) apply to both uninsured and underinsured motor vehicle coverage. Because the arbitration procedure expressed in subdivision (f) does not conflict with anything expressed in subdivision (p), subdivision (f) applies both to uninsured and underinsured motorist coverage.

IV

General also claims section 11580.2 did not apply to underinsured motorists until July 1985. It argues the policy here was issued on February 3, 1985, and the collision occurred February 10, so section 11580.2 does not apply. General is wrong. The amendment adding underinsured motorists to the definition of uninsured motorist in subdivision (b) became effective January 1, 1985. General's argument of a July effective date is based on the effective date of *mandatory* underinsured motorist coverage. (§ 11580.2,

subd. (p)(7).) It has nothing to do with the effective date of section 11580.2, subdivisions (b) and (f). Although the underinsured motorist coverage provided in the Chrismans' policy was then optional rather than mandatory, it is clearly coverage contemplated by section 11580.2 as of the date of issue and thus subject to the statute's regulatory provisions.

## V

General also contends the Chrismans are estopped from relying upon section 11580.2, subdivision (f), because they did not refer to it when they asked for arbitration and did not file a declaration regarding possible workers' compensation proceedings as required by section 11580.2, subdivision (f). Thus, it claims they are deemed to have elected to proceed under only their limited contractual arbitration rights. No case or statutory authority is cited.

General is alleging estoppel by conduct. "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623.) ■ Absent reliance and detriment, there is no estoppel. (*In re Lisa R.* (1975) 13 Cal.3d 636, 645 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017].) Here, General claims neither reliance on any action taken by the Chrismans nor detriment resulting from such reliance.

An alternative writ or order to show cause would add nothing to the presentation. A peremptory writ is proper. (Code Civ. Proc., § 1088; *United Nuclear Corp.* v. *Superior Court* (1980) 113 Cal.App.3d 359 [169 Cal.Rptr. 827]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165].)

Let a peremptory writ issue prohibiting the superior court from holding further proceedings in this matter except in accordance with Code of Civil Procedure section 1286. Should the award be confirmed, it shall be reduced to $50,000 so as not to exceed the underinsured limits of the Chrismans' policy.

Butler, J., and Todd, J., concurred.