52 Cal.Rptr.3d 463 (2006)
145 Cal.App.4th 1305
Charles Michael O'HANESIAN, Plaintiff and Appellant,
v.
STATE FARM MUTUAL AUTOMBILE INSURANCE COMPANY et al., Defendants and Respondents.
No. E038114.
Court of Appeal of California, Fourth District, Division Two.
December 19, 2006.
*465 Law Office of Duncan M. James, Duncan M. James, David M. Kindopp, Donald J. McMullen and Joseph John Turri, Ukiah, for Plaintiff and Appellant.
Crandall, Wade & Lowe, James L. Crandall, Edwin B. Brown, and William F. Zulch, Irvine, for Defendants and Respondents.

OPINION
HOLLENHORST, Acting P.J.

I. INTRODUCTION
Plaintiff and appellant Charles Michael O'Hanesian appeals from an order of dismissal following the trial court's sustaining a demurrer without leave to amend as to plaintiffs complaint against defendants and respondents State Farm Mutual Automobile Insurance Company and State Farm General Insurance for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing. The gravamen of plaintiffs complaint was that even though he obtained judgment in his underlying action against the tortfeasor, defendants unjustifiably refused to pay him the benefits to which he was entitled under the underinsured motorist provisions of the insurance policy defendants issued to him.
*466 On appeal, plaintiff contends the trial court erred in sustaining the demurrer to his complaint without leave to amend. First, plaintiff contends, based on his interpretation of the insurance policy, statutes, and public policy, that defendants are bound by the judgment entered in the underlying action to the extent that the judgment determined liability and the amount of damages plaintiff sustained in the automobile accident. Second, plaintiff contends he was not required to complete arbitration proceedings with defendants before prosecuting a lawsuit against them for breach of contract and bad faith. We find no error, and we affirm.

II. FACTS AND PROCEDURAL

BACKGROUND
Because the matter arises after demurrer has been sustained, we must treat all properly pled facts as true. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal. Rptr. 718, 703 P.2d 58.)
The operative pleading is the first amended complaint. Plaintiff alleged that he sustained injuries when his vehicle was rear-ended by a vehicle driven by Curtis Thurlow on November 2, 2001. On October 21, 2002, with defendants' knowledge, plaintiff filed a civil action against Thurlow. Thurlow failed to appear after having been served by publication. Following a prove-up hearing, the trial court entered judgment against Thurlow in the amount of $3,751,000.
Thurlow was insured by Farmers Insurance Company ("Farmers"). Following the entry of judgment against Thurlow, Farmers paid plaintiff the policy limit of $100,000 on Thurlow's policy.
Plaintiff was insured by defendants with underinsured motorist coverage of $100,000 and personal liability umbrella coverage in the amount of $1 million. The umbrella coverage applied to underinsured motorist claims. The insurance policy was attached to and incorporated in the first amended complaint.
The automobile insurance policy provides for payment of underinsured motorist benefits as follows:
"If the damages are caused by an underinsured motor vehicle, the most we pay will be the lesser of:
"a. the difference between the limits of liability of this coverage and the amount paid to the insured by or for any person ... who is or may be held legally liable for the bodily injury; or
"b. the difference between the amount of the insured's damages for bodily injury, and the amount paid to the insured by or for any person ... who is or may be held legally liable for the bodily injury. (Italics omitted.)
The automobile insurance policy further provides:
"We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle [defined in the policy to include an underinsured motor vehicle]. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
"If the damages are caused by an underinsured motor vehicle, there is no coverage until:
"1. The limits of liability of all bodily injury liability bonds and policies that apply have been used up by payment of judgments or settlements to other persons; or
"2. Such limits of liability or remaining part of them have been offered to the insured in writing." (Italics and capitalization omitted.)
*467 The policy provides, with respect to the insured's duties, "The person making claim also shall: [H] (a) [G]ive us all the details about the ... injury, treatment and other information we need to determine the amount payable. [11] (b) [B]e examined by physicians chosen and paid by us as often as we reasonably may require."
After obtaining payment from Farmers, plaintiff provided defendants with a copy of the judgment against Thurlow and demanded that defendants pay plaintiff the maximum benefit available under the underinsured motorist and umbrella coverage. Defendants refused to tender any policy benefits, informed plaintiff they wanted to evaluate the nature and extent of his injuries, and requested him to submit to a medical evaluation.
Plaintiff twice more informed defendants that the judgment against Thurlow conclusively established the nature, extent, and amount of plaintiffs damages, and there was nothing more for defendants to evaluate. Plaintiff again demanded the maximum benefits available under his policy. Each time, defendants again refused to tender payment and again requested plaintiff to submit to an evaluation of the nature and extent of his injuries.
Plaintiff filed a first amended complaint against defendants, asserting causes of action for declaratory relief, breach of the insurance contracts, and breach of the implied covenant of good faith and fair dealing.
Defendants filed a demurrer to the first amended complaint on the grounds it failed to state facts sufficient to constitute a cause of action. (Code Civ. Proc. § 430.10, subd. (e).) Defendants argued they were not bound by the judgment entered against Thurlow in the underlying action. They further argued that plaintiffs action against them was premature because Insurance Code section 11580.2 (hereafter, section 11580.2) required plaintiff to complete arbitration proceedings with them before he could sue them for breach of the insurance contracts or breach of the implied covenant of good faith and fair dealing.
Defendants also moved for the trial court to strike plaintiffs requests for punitive damages and his prayers for emotional distress damages for breach of the insurance contract and for breach of the covenant of good faith and fair dealing.
Plaintiff filed an opposition to the demurrer. Plaintiff argued that defendants were bound by the judgment in the underlying action based on the language of the insurance policy and the controlling statutes. Plaintiff further argued that his action against defendants was not premature. Plaintiff also opposed the motion to strike.
The trial court entered an order sustaining the demurrer without leave to amend and granting the motion to strike. Thereafter, an order was entered dismissing the action, and this appeal ensued.

III. DISCUSSION
Plaintiff contends that defendants are bound by the judgment entered in the underlying action to the extent the judgment determined liability and damages, and neither the language of the policy, statutes, nor public policy required that plaintiff submit his claim to arbitration as a precondition to his lawsuit against defendants. Plaintiff argues the trial court therefore erred in sustaining the demurrer to his complaint without leave to amend.

A. Standard of Review
"When we review a judgment of dismissal following the trial court's sustaining of a demurrer, `"[w]e treat the demurrer as admitting all material facts *468 properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citation.]" (Century Surety Co. v. Crosby Insurance, Inc. (2004) 124 Cal.App.4th 116, 121-122, 21 Cal.Rptr.3d 115.)

B. Interpretation of Insurance Policy and Construction of Statutes
Resolution of this case turns on both the interpretation of the insurance policy and the construction of the controlling statutes.

1. Interpretation of Insurance Policy
Settled rules govern the interpretation of an insurance policy. When material facts are undisputed, the interpretation of an insurance policy presents solely a question of law. (Haynes v. Farmers Ins. Exchange (2004) 32 Cal.4th 1198, 1204, 13 Cal.Rptr.3d 68, 89 P.3d 381.) And when an insurance policy is ambiguous, it is generally construed in favor of the insured: "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. [Citation.] The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs. [Citation.] On the other hand, `[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' [Citations.] This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, `the objectively reasonable expectations of the insured.' [Citation.] Only if this rule does not resolve the ambiguity do we then resolve it against the insurer. [Citation.] [¶] In summary, a court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy. [Citation.] This is because `language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract' [Citations.]" (Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1264-1265, 10 Cal.Rptr.2d 538, 833 P.2d 545.)
However, when policy provisions conform to the language of statutes, the general rule that ambiguities are construed against the insurer does not apply. Instead, the statute and the policy provision should be construed to implement the intent of the legislature. (See Interinsurance Exchange v. Marquez (1981) 116 Cal. App.3d 652, 656, 172 Cal.Rptr. 263; State Farm Mut. Auto. Ins. Co. v. Messinger (1991) 232 Cal.App.3d 508, 519, 283 Cal. Rptr. 493.)

*469 2. Construction of Statutes

"In construing statutory provisions, we `"... ascertain the intent of the Legislature so as to effectuate the purpose of the law." [Citation.] In interpreting particular words, phrases, or clauses in a statute, "the entire substance of the statute or that portion relating to the subject under review should be examined in order to determine the scope and purpose of the provision...."' [Citation.] `The literal meaning of the words of a statute may be disregarded to avoid absurd results' or if such a reading would frustrate the `"manifest purposes" of the legislation as a whole. [Citations.]' [Citations.] [¶] `"Wherever possible, potentially conflicting provisions [within the statute] should be reconciled in order to carry out the overriding legislative purpose as gleaned from a reading of the entire act. [Citation.] A construction which makes sense of an apparent inconsistency is to be preferred to one which renders statutory language useless or meaningless. [Citations.]"' [Citation.] [¶] `"[T]he provisions of the statute [Ins. Code, § 11580.2] are a part of every policy of insurance to which it is applicable." [Citation.]' [Citation.] If the `... insurance policy conflicts with section 11580.2, the statute prevails. [Citation.]' [Citation.] `California courts are required to construe the uninsured motorist statute (Ins.Code, § 11580.2) in favor of coverage wherever possible. Any doubtful language in the statute should be resolved in favor of the insured. However, the principle of liberal interpretation should not be applied to give a forced construction or one which inserts a requirement not contained in the statute where the statute is clear in the context of the factual situation. [Citations.]' [Citation.]" {Hartford Casualty Ins. Co. v. Camilla (1994) 28 Cal.App.4th 1305,1310, 34 Cal.Rptr.2d 302.)

C. Relevant Statutory and Contractual Provisions
Section 11580.2 governs uninsured and underinsured motorist coverage, and its provisions are deemed part of every uninsured and underinsured motorist policy. (Quintano v. Mercury Casualty Co. (1995) 11 Cal.4th 1049, 1053, 48 Cal. Rptr.2d 1, 906 P.2d 1057 (Quintano).) Section 11580.2, subdivision (f), addresses resolution of claims by arbitration: "The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration...."
The automobile insurance policy defendants issued to plaintiff defines an uninsured motor vehicle to include an underinsured motor vehicle. The policy provides, with respect to deciding fault and amount of damages under uninsured/underinsured motorist coverage:
"Two questions must be decided by agreement between the insured and us:
"1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle; and
"2. If so, in what amount?
"If there is no agreement, upon written request of the insured or us, these questions shall be decided by arbitration as provided by section 11580.2. ... (Italics added.)

D. Analysis
Defendants argue, and the trial court held, that despite the judgment in the underlying action, they are entitled to arbitration to determine the amount of damages. Defendants rely on both the *470 contractual arbitration provision and section 11580.2.
Plaintiff argues, however, that neither section 11580.2, subdivision (f), nor the contractual arbitration provision, applies to bodily injury claims in underinsured motorist coverage because (1) section 11580.2, subdivision (p)[1] specifically governs underinsured motorist coverage and, by its terms, prevails over any other inconsistent provisions of the statute and (2) the contractual arbitration provision applies only to uninsured motorist coverage, not underinsured motorist coverage.

1. Applicability of Section 11580, Subdivision (f) to Underinsured Motorist Claims
Arbitration is a favored method of dispute resolution in California. (See Villacreses v. Molinari (2005) 132 Cal. App.4th 1223, 1229, 34 Cal.Rptr.3d 281 ["In light of California's strong public policy favoring arbitration as a method of dispute resolution, `[c]ourts should indulge every intendment to give effect to such proceedings [citation] and order arbitration unless it can be said with assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. [Citation.]' [Citation.] Hence, any reasonable doubt as to whether a claim falls within the arbitration clause is to be resolved in favor of arbitration. [Citation.]"].)
California courts have held that the arbitration provisions of section 11580, subdivision (f), apply to underinsured motorist claims. (See United Services Auto. Assn. v. Superior Court (1990) 221 Cal.App.3d 79, 83, 270 Cal.Rptr. 376 (United Services) [holding that a policy provision allowing trial de novo following underinsured motorist arbitration was invalid and unenforceable by either party]; Chrisman v. Superior Court (1987) 191 Cal.App.3d 1465, 1468-1469, 236 Cal.Rptr. 703 (Chrisman) [holding invalid as to the insurer a policy provision for trial de novo following an underinsured motorist arbitration on the ground such provision violated section 11580.2, subdivision (f) ].)
Plaintiff seeks to distinguish United Services, supra, 221 Cal.App.3d 79, 270 Cal. Rptr. 376, and Chrisman, supra, 191 Cal. App.3d 1465, 236 Cal.Rptr. 703, on the ground that both were decided before *471 Quintano, supra, 11 Cal.4th 1049, 48 Cal. Rptr.2d 1, 906 P.2d 1057, in which the California Supreme Court held that section 11580.2, subdivision (i) (which then stated that no cause of action shall accrue unless, within one year, the insured "has formally instituted arbitration proceedings") did not apply to claims on an underinsured motorist policy. The court in Quintano did not address the applicability of section 11580.2, subdivision (f), to underinsured motorist coverage. Thus, Quintano does not call into question the continuing viability of United Services and Chrisman.
The court in Chrisman, supra, 191 Cal. App.3d at p. 1469, 236 Cal.Rptr. 703, explicitly stated, "Because the arbitration procedure expressed in subdivision (f) does not conflict with anything expressed in subdivision (p), subdivision (f) applies both to uninsured and underinsured motorist coverage." Plaintiff has not persuaded us to the contrary. We therefore conclude that section 11580.2, subdivision (f), applies to plaintiffs underinsured motorist claim.
Plaintiff further argues, however, that his policy is ambiguous and cannot be read to require him to arbitrate his underinsured motorist claim after obtaining a default judgment against the tortfeasor. The policy language conforms to the statutory language. When policy provisions conform to the language of the statute, the broad principle that ambiguities must be construed against the insurer as the party that created the ambiguity does not apply, and the policy provision should be given a reasonable construction. (See generally Interinsurance Exchange v. Marquez, supra, 116 Cal.App.3d at p. 656, 172 Cal. Rptr. 263; State Farm Mut. Auto. Ins. Co. v. Messinger, supra, 232 Cal.App.3d at p. 519, 283 Cal.Rptr. 493; Fagundes v. American Internat. Adjustment Co. (1992) 2 Cal.App.4th 1310, 3 Cal.Rptr.2d 763.)
The uninsured/underinsured motorist statute is designed to protect insureds injured by uninsured or underinsured motorists in the same manner as those injured by insured motorists. Both the statute and the insurance policy at issue require the insurer to pay, up to policy limits, what an insured is legally entitled to recover from an uninsured/underinsured motorist. Thus, even accepting for purposes of argument that the policy is ambiguous, we note, as discussed above, that courts have construed the statutory arbitration provisions of section 11580.2, subdivision (f), as applying to both underinsured and uninsured motorist claims. The similar policy language should reasonably be construed in the same fashion. Thus, we conclude that the arbitration provisions of the policy apply both to underinsured and uninsured motorist claims.
Plaintiff argues nonetheless that such a conclusion would defeat the legislative purpose underlying section 11580.2 of protecting persons injured in automobile accidents caused by the actionable fault of another driver who is uninsured or underinsured. We disagree. Our conclusion does not reach issues of coverage and liability; it merely addresses the enforcement of the parties' agreement as to what forum will be the decision maker when such issues arise.
The fact that an insurance policy specifies the process for determining legal entitlement to benefits does not create any inherent conflict with the statutory right to uninsured/underinsured motorist benefits. Rather, simply specifying a procedure, such as arbitration, for determining that entitlement does not impermissibly burden an insured's rights under the statute.
In one case that addressed a similar issue involving the entitlement to uninsured motorist benefits, the court held that such entitlement must be determined by *472 arbitration under the terms of the insurance policy at issue. (Loscalzo v. Federal Mut. Ins. Co. (1964) 228 Cal.App.2d 391, 39 Cal.Rptr. 437.) In that case, the court held that insureds were entitled to enforce the agreement to arbitrate uninsured motorist coverage even though judgment had been entered in an underlying action finding one of the insureds had been at fault in the accident. (Id. at pp. 394, 398-399, 39 Cal.Rptr. 437.) The insurer argued that the underlying judgment was res judicata of the insured's negligence, but the court found it unnecessary to reach that issue, holding that the determination of the conclusive effect of such judgment was a decision for the arbitrator, not the court. The court explained that even if the judgment caused the insureds'"contentions to lack substantive merit, such fact does not justify the order [denying a petition to compel arbitration]. [Citations.] `The parties have contracted for an arbitrator's decision and not for that of the courts.' [Citation.]" (Id. at p. 398, 39 Cal.Rptr. 437.)
Here, likewise, the parties contracted for an abitrator's decision and not that of the courts. We see no basis for distinguishing Loscalzo, supra, 228 Cal.App.2d 391, 39 Cal.Rptr. 437, on the ground that it involved uninsured rather than underinsured motorist claims. The public policy in favor of arbitration is the same in either instance. Thus, plaintiff is free to raise his arguments before the arbitrator that the underlying judgment is conclusive of liability and damages.
Our conclusion is supported by cases from other jurisdictions that have reached a similar conclusion, at least in the context of uninsured motorist claims. For example, in Wales v. State Farm Mut. Auto. Ins. Co. (1976) 38 Colo.App. 360 [559 P.2d 255] (Wales), the insurance policy in question included a provision requiring arbitration of any disagreement concerning uninsured motorist coverage and the amount of benefits to which the plaintiff was entitled. The plaintiff informed her insurer she had been involved in an accident with an uninsured motorist, requested arbitration, and also requested consent to proceed with a lawsuit against the uninsured driver. (Id. at p. 361 [559 P.2d at p. 256].) The insurer consented to the lawsuit. The plaintiff did not proceed with arbitration, but proceeded with her lawsuit against the uninsured motorist and obtained a judgment against him. The plaintiff then demanded that the insurer pay uninsured motorist benefits without arbitration. The insurer refused, and the plaintiff brought an action against it for breach of contract, contending that any provision in the policy restricting her access to a judicial determination of the damages to which she was legally entitled under the uninsured motorist coverage was invalid. The trial court granted judgment in favor of the plaintiff, but the appellate court disagreed. (Id. at p. 362 [559 P.2d at p. 256].) The court reasoned that although the legislature was concerned with protecting innocent victims of uninsured drivers, it was also concerned with fostering arbitration. The court took both public policies into account and held that the arbitration clause was enforceable. (Id. at p. 364, 559 P.2d at p. 258.)
Similarly, in Victor v. State Farm Fire & Cos. Co. (D.Alaska 1992) 795 F.Supp. 300, an insured obtained a default judgment against an uninsured motorist and demanded that the insurer pay uninsured motorist benefits. The insurer refused because the insured had not complied with the arbitration provision in the insurance policy. Because of the state's "strong public policy" in favor of arbitration, the court refused to invalidate the arbitration provision. (Id. at p. 302; see also Riley v. State Farm Mut. Auto. Ins. Co. (6th Cir.1970) 420 F.2d 1372, 1376 [holding that an insurer was entitled to arbitration of uninsured *473 motorist liability as provided in the policy, even though the insured had previously obtained a default judgment against the uninsured motorist]; Sands v. Andino (1991) 404 Pa.Super. 238, 244 [590 A.2d 761, 763], [stating that an insurer was entitled to summary judgment upholding its right to arbitrate uninsured motorist benefits, even though the insured had obtained a default judgment against the uninsured motorist].)[2]
We conclude that arbitration is the forum for determining plaintiffs rights to uninsured motorist benefits under the terms of the policy. The trial court did not err in sustaining the demurrer.

IV. DISPOSITION
The judgment is affirmed.
We concur: RICHLI and MILLER, JJ.
NOTES
[1] Section 11580.2, subdivision (p) provides:

"This subdivision applies only when bodily injury, as defined in subdivision (b), is caused by an underinsured motor vehicle. If the provisions of this subdivision conflict with subdivisions (a) through (o), the provisions of this subdivision shall prevail.
".....................
"(3) This coverage does not apply to any bodily injury until the limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury have been exhausted by payment of judgments or settlements, and proof of the payment is submitted to the insurer providing the underinsured motorist coverage.
"(4) When bodily injury is caused by one or more motor vehicles, whether insured, underinsured, or uninsured, the maximum liability of the insurer providing the underinsured motorist coverage shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury.
"...........................
"(6) If the insured brings an action against the owner or operator of an underinsured motor vehicle, he or she shall forthwith give to the insurer providing the underinsured motorist coverage a copy of the complaint by personal service or certified mail. All pleadings and depositions shall be made available for copying or copies furnished the insurer, at the insurer's expense, within a reasonable time.
"(7) Underinsured motorist coverage shall be included in all policies of bodily injury liability insurance providing uninsured motorist coverage issued or renewed on or after July 1, 1985 ...." (§ 11580.2, subd. (p).)
[2] We are aware that some courts have reached a differing conclusion on the basis that the right to arbitrate had been waived. (See, e.g., Bryant v. Clark (1992) 62 Ohio St.3d 485, 488 [584 N.E.2d 687, 690]) [holding that an insurer who consented to default judgment in a suit against the tortfeasor and did not request arbitration until after the judgment had been entered had waived the right to arbitration]. Here, however, the issue of waiver was neither raised nor briefed in the present case and is not before us.