213 Cal.App.3d 1082 (1989)
261 Cal. Rptr. 894
In re MELISSA G., a Person Coming Under the Juvenile Court Law.
DARDELL McFARLIN, as Director, etc., Plaintiff and Respondent,
v.
FERMIN G., Defendant and Respondent; FELIX DE L., Objector and Appellant.
Docket No. H004943.
Court of Appeals of California, Sixth District.
August 31, 1989.
*1083 COUNSEL
Patricia L. Watkins for Objector and Appellant.
Ralph R. Kuchler, County Counsel, and William K. Rentz, Deputy County Counsel, for Plaintiff and Respondent.
Catherine C. Czar and Hovde, Worthington, Miller & Rudoni for Defendant and Respondent.
Patricia A. Grossman and Anna L. Ollinger for Minor.
OPINION
ELIA, J.
Section 621 of the Evidence Code provides that "the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage" absent rebuttal by certain specified means within two years of the child's birth. (1) The sole issue before us is whether the trial court's application of this presumption was unconstitutional in this case. We conclude that it was, and accordingly reverse the trial court's order of paternity.

*1084 FACTUAL BACKGROUND
The essential facts are undisputed. Rita de L. has five minor children. The oldest three, Lenora, Eugene and James, are the children of respondent Fermin G., Rita's ex-husband, and now live with him. Melissa, the fourth child, was born eight days prior to Rita and Fermin's separation in August 1983. Fermin was listed on the birth certificate as Melissa's father and Melissa was named as a child of the marriage in Rita and Fermin's dissolution. Rita told a social worker, however, that appellant Felix de L. was Melissa's father.
In December 1983 Rita and Felix began living together and in August 1984 they married. Their daughter, Shannon, was born in February 1985. Between August 1983 and July 1987, Melissa lived with Rita and Felix. During this period Rita, who has an alcohol abuse problem, was arrested several times. During the two or three days she spent in jail on these occasions, Felix cared for Melissa.
Although Fermin visited and was visited by the older children during this period, he never visited Melissa.
Neither Rita nor Fermin requested blood tests to determine paternity within two years of Melissa's birth. Nor did Felix file an affidavit of paternity within this period.
On July 13, 1987, Felix was arrested for spousal abuse. On November 10, 1987, Melissa, Shannon, Lenora, James and Eugene were taken into protective custody when Rita was hospitalized and the children were found living in "an abandoned truck trailer, without adult supervision ... heat, cooking or sanitary facilities."
On November 13, petitions were filed alleging that Melissa came within the provisions of Welfare and Institutions Code former section 300, subdivisions (a) and (b). The juvenile court sustained an amended petition at a jurisdictional hearing on December 22, 1987, as to Rita, and sustained a section 300, subdivision (a) petition on Shannon as to Felix. At the dispositional hearing on January 12, 1988, the court placed Lenora, James and Eugene with Fermin, and Melissa and Shannon were placed in the same foster home. The court then ordered blood tests to determine paternity. On March 29, the results of the blood tests were presented to the court. They established a 99.1 percent probability that Felix was the father of Melissa.
*1085 After several continued hearings at which the court took evidence on the familial relationship of Fermin, Felix and Melissa and heard argument regarding Fermin's contention that the court should apply Evidence Code section 621 and not consider the results of the blood tests, the court issued a written decision on May 23, 1988. Citing Michelle W. v. Ronald W. (1985) 39 Cal.3d 354 [216 Cal. Rptr. 748, 703 P.2d 88] and Michael H. v. Gerald D. (1987) 191 Cal. App.3d 995 [236 Cal. Rptr. 810], affirmed (1989) 491 U.S. ___ [105 L.Ed.2d 91, 109 S.Ct. 2333], the court concluded that it had to apply section 621 and could not consider the blood test results. It therefore determined Fermin to be Melissa's father.
Melissa's placement in foster care with Shannon was continued at the dispositional hearing on June 14, 1988. An order determining paternity and disposition was filed on August 16, 1988. This appeal ensued.
Before we proceed to discuss the issue in this case, we note the stance of the parties in this appeal. Fermin, the respondent, asks us to uphold the court's presumption of his paternity of Melissa. Melissa, the real party in interest, Felix, the putative father and appellant, and the Monterey County Department of Social Services, the nominal respondent, all ask this court to reverse the trial court's order.
Both the California appellate courts and the United States Supreme Court have considered whether the conclusive presumption of Evidence Code section 621, by its concomitant denial of the opportunity to present evidence of paternity, violates constitutional due process and equal protection guarantees. The factual context of these cases provides some guidance as to whether the statute's application was constitutionally offensive in this instance.
In re Lisa R. (1975) 13 Cal.3d 636 [119 Cal. Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017] arose, like this case, in the context of a dependency proceeding. Lisa's mother was separated from her husband and living with the putative father when Lisa was conceived. The putative father was listed on the birth certificate as Lisa's father, and lived with Lisa and her mother until Lisa was five months old, when the mother returned to her husband. After Lisa was made a dependent of the juvenile court, however, he was excluded from Lisa's dependency review hearing and the trial court refused to consider evidence that he was Lisa's natural father.
The California Supreme Court held that in order to determine whether this preclusion violated appellant's constitutional rights, it was necessary to *1086 weigh the competing private and state interests involved. (13 Cal.3d at p. 648.) In that case, where Lisa's mother and presumed father had died, and Lisa had been in foster care for four years, the court held the state's interest in the child's welfare and in preserving the integrity of the family unit did not outweigh the putative father's interest in establishing his status as Lisa's father.
In Estate of Cornelious (1984) 35 Cal.3d 461 [198 Cal. Rptr. 543, 674 P.2d 245], the court considered a due process challenge by a putative daughter attempting to overcome the presumption in order to be considered for appointment as administrator of her intestate father's estate. The court upheld the trial court's determination that the daughter's purely financial private interest in inheriting from her natural father was outweighed by the state's interests in conclusively presuming her legitimacy.
In Michelle W. v. Ronald W., supra, 39 Cal.3d 354, the court considered the issue in a factually distinct context. Ronald, the husband of Michelle's mother Judith, was the presumed father of Michelle. Judith left Ronald when Michelle was four years old and later married Donald, Michelle's natural father. Ronald supported and cared for Michelle during the marriage and thereafter exercised his visitation rights to maintain his relationship with her. After his marriage to Judith, Donald held out Michelle as his own child.
The year after their marriage, Donald and Michelle brought an action to establish paternity. Applying the presumption of Evidence Code section 621, the trial court determined that Ronald was Michelle's father. On appeal, Donald and Michelle argued that the application of the presumption deprived them of due process and equal protection.
Applying the weighing test established in Lisa R., the appellate court held that Donald's due process rights had not been violated by the application of Evidence Code section 621. Expressly leaving open the question of the validity of the statute as applied to situations where the state had "attempted to intervene or to prevent the establishment of a relationship between a putative father and child" (Michelle W. v. Ronald W., supra, 39 Cal.3d at p. 362), the court determined that its application was proper in that case, where the state's interest in maintaining the integrity of the family and in protecting the child's welfare outweighed Donald's private interest in establishing his status as Michelle's natural father. Since Michelle and Ronald, her presumed father, enjoyed a continuing emotional and financial father-daughter relationship, the court rejected Michelle's due process and equal protection claims and determined that Donald's interest in establishing *1087 paternity was not as weighty as the interests of the fathers in Lisa R., and Stanley v. Illinois (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208].
In Stanley, the children's natural father had lived with and supported them and their mother for 18 years. After the mother died, the children were removed from Stanley's custody on the strength of Illinois's statutory presumption that unwed fathers were unfit custodians of minor children. The Supreme Court invalidated this presumption on the grounds that it violated Stanley's due process right to notice and a hearing on the issue of his fitness. (405 U.S. at p. 649 [31 L.Ed.2d at p. 557].)
In 1987, the Second Appellate District upheld the use of the Evidence Code section 621 presumption against constitutional attack in Michael H. v. Gerald D., supra, 191 Cal. App.3d 995. This result was recently affirmed by the United States Supreme Court. (See Michael H. v. Gerald D., supra, 491 U.S. ___ [105 L.Ed.2d 91].)
In that case, Carole D. married Gerald D. in 1976. Victoria was born in May 1981, the product of a liaison between Carole and Michael H. during Carole and Gerald's marriage. Gerald was listed as the father on the birth certificate and held out Victoria as his daughter, although Carole told Michael he might be the father.
In October 1981, blood tests of Michael, Carole and Victoria showed a 98.07 percent probability that Michael was Victoria's father. In November 1982, Michael filed an action to establish paternity and his right to visit Victoria. Victoria, represented by a guardian ad litem, then filed a cross-complaint asserting her entitlement to a filial relationship with Michael.
Between 1981 and 1984, Victoria and Carole lived with Gerald, with Michael, and with a third partner of Carole's. In May 1984, however, Carole reconciled with Gerald. They now live with Victoria and the two other children born of the marriage.
In May 1983 the trial court ordered visitation privileges be accorded Michael. In October 1983 Gerald, who had intervened in the action, moved for summary judgment on the ground that under Evidence Code section 621 there were no triable issues of material fact as to Victoria's paternity. Rejecting Michael's challenge to the constitutionality of the statute, the trial court granted Gerald's summary judgment motion and also denied Michael's and Victoria's motions for continued visitation pending appeal, finding that visitation would "`violat[e] the intention of the Legislature by *1088 impugning the integrity of the family unit.'" (Michael H. v. Gerald D., supra, 491 U.S. at p. ___ [105 L.Ed.2d at p. 101].)
The United States Supreme Court narrowly affirmed the California appellate court in a five-four decision which contains five separate opinions. Justice Brennan, dissenting, summarized the common ground shared by a majority of the court as follows: "Five Members of the Court refuse to foreclose `the possibility that a natural father might ever have a constitutionally protected interest in his relationship with a child whose mother was married to and cohabiting with another man at the time of the child's conception and birth.' ... Five Justices agree that the flaw inhering in a conclusive presumption that terminates a constitutionally protected interest without any hearing whatsoever is a procedural one.... Four Members of the Court agree that Michael H. has a liberty interest in his relationship with Victoria, ... and one assumes for purposes of this case that he does...." (491 U.S. at p. ___ [105 L.Ed.2d at p. 114].)
Writing for the plurality, Justice Scalia rejected Michael's claim that he had a constitutionally protected liberty interest in his established parental relationship with Victoria and that the state's interest in protecting Gerald and Carole's marital union was an insufficient interest justifying termination of this relationship. The plurality held that where a child is born into an extant marital family it is not unconstitutional for the state to give categorical preference to the husband of the marriage over the natural father of the child: "It is a question of legislative policy and not constitutional law whether California will allow the presumed parenthood of a couple desiring to retain a child conceived within and born into their marriage to be rebutted." (Michael H. v. Gerald D., supra, 491 U.S. at p. ___ [105 L.Ed.2d at p. 110].)
Assuming arguendo that a child had a liberty interest in a filial relationship, the plurality also rejected Victoria's claim to a filial relationship with Michael on the ground that it would require a state to recognize multiple fatherhood; and her equal protection claim on the ground that allowing a child to contest legitimacy would undermine the marital union. (491 U.S. at p. ___ [105 L.Ed.2d at pp. 110-111].)
The Supreme Court's affirmance in Michael H. was limited to situations in which the husband and wife wish to raise the wife's child jointly; Justice Scalia explicitly left open the possibility that a constitutionally protected interest might be implicated where no such union exists. (491 U.S. at p. ___, fn. 7 [105 L.Ed.2d at p. 110].) That is clearly the case here; the marital relationship between Rita and Fermin ended only eight days after Melissa's *1089 birth, and Rita and Felix raised Melissa and Shannon until shortly before they were made dependents of the juvenile court. The "categorical preference" for an extant marital union which Justice Scalia recognized as being expressed by the statute thus has no application to this case.
Felix's interest in a paternal relationship with Melissa is also more significant than that of the putative father in Michael H. Here, as in Lisa R., Felix lived with Melissa for almost four years beginning shortly after Melissa's birth. And unlike Ronald W., Fermin had no ongoing, or any, relationship with Melissa which would undermine this interest.
As to the public interest in Melissa's welfare, we note that the concern of Melissa, of Felix and of the nominal respondent, Monterey County Department of Social Services, beyond that of Felix's constitutional right to a relationship with his natural daughter, is that Melissa and Shannon are emotionally and psychologically bonded to each other, and that it would be detrimental to separate them. If Fermin is conclusively presumed to be Melissa's father, she could be placed in the custody of Fermin but not in that of Felix, the only father she has ever known. Shannon, however, could be placed in Felix's custody but not in that of Fermin, to whom she is biologically unrelated. Thus, we are additionally concerned with Melissa's right to a sibling relationship.
We are not asked to decide, and explicitly do not hold that this interest has constitutional dimensions. The Supreme Court in Michael H. assumed arguendo that Victoria had a liberty interest in a filial relationship with Michael; we need only assume for the purposes of this case that the public interest in Melissa's welfare encompasses her sibling relationship with Shannon. In light of this public interest, as well as Felix's private interest in establishing his parental relationship with Melissa, the balancing mandated by the California Supreme Court weighs in favor of appellant.
As Justice Scalia noted in Michael H., irrebuttable presumption cases ultimately call into question not the adequacy of procedures but "the adequacy of the `fit' between the classification and the policy that the classification serves." (Michael H. v. Gerald D., supra, 491 U.S. at p. ___ [105 L.Ed.2d at p. 104].) In this case, in which Melissa has no available mother, her presumed father is a stranger to her, and her most important psychological relationship is to a sibling to whom she is presumed biologically unrelated, we conclude the statute's classification does not serve the interests it was designed to protect. Accordingly, we hold the application of Evidence Code section 621 was unconstitutional in this instance.
*1090 Since no challenges have been made to the dispositional order, we will affirm it.
The order of paternity is reversed, and the cause remanded for further proceedings consistent with this opinion.
Capaccioli, Acting P.J., and Premo, J., concurred.