[No. G012153. Fourth Dist., Div. Three. Mar. 30, 1993.]

COUNTY OF ORANGE, Plaintiff and Respondent, v.
LESLIE B., Defendant and Appellant;
GREGORY Z., Defendant and Respondent.

**COUNSEL**

E. Gene Crain for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster, Raquel M. Gonzalez and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Respondent.

Sydney K. Ericson for Defendant and Respondent.

**OPINION**

**WALLIN, J.**—Pursuant to Welfare and Institutions Code section 11350.1, the Orange County District Attorney filed a complaint on behalf of Jennifer K. against Leslie B. and Gregory Z. to establish paternity and to provide support. Gregory was married to and lived with Jennifer's mother Catherine K. when Jennifer was conceived, but they separated and divorced shortly thereafter. Leslie was having a sexual relationship with Catherine at that time. Leslie appeals the order of paternity finding him to be the natural and legal father of Jennifer. He contends the court erred in refusing to declare that Gregory is Jennifer's legal father based on the presumption contained in Evidence Code section 621.[1] We affirm.

Catherine and Gregory were married in November 1974. They spent a great deal of time apart during their brief marriage. In May 1976 Catherine

---

[1] All further statutory references are to the Evidence Code.

went to Hawaii, leaving Gregory a note stating their marriage was over. The two did not have sexual relations thereafter. When Catherine returned she moved in with her parents. In June she moved back in with Gregory for one month.

During the summer of 1976 Catherine and Leslie, who was also married, were involved in a sexual relationship. Catherine filed a petition for dissolution of her marriage to Gregory on October 18. The petition stated there were no children of the marriage. The divorce became final in May 1977.

When Catherine and Gregory separated, Catherine did not know she was pregnant with Jennifer, who was born on March 2, 1977. No father was named on the birth certificate. Neither Leslie nor Gregory ever knew that Catherine was pregnant or that she had given birth to Jennifer.

In January 1988 Catherine, in response to Jennifer's inquiries, told Jennifer that Leslie was her father. Catherine contacted Leslie and told him he had a daughter. Jennifer and Leslie visited each other several times during the two years following that initial contact. During this time Leslie loaned Catherine small amounts of money. On at least one occasion Leslie told Jennifer he was her father and there was a resemblance between the two.

In May 1989 the Orange County District Attorney filed this action against Leslie to establish paternity and obtain support for Jennifer. Leslie denied all allegations and as an affirmative defense asserted it was conclusively presumed that Gregory was Jennifer's legal father. An amended complaint added Gregory as a defendant, and for the first time he learned of Jennifer's birth. Voluntarily taken blood tests of all parties showed a 99.25 percent probability that Leslie was the natural father of Jennifer and conclusively showed Gregory was not her natural father. The trial court declared Leslie to be the natural and legal father of Jennifer.

 ▬ █ Leslie seeks to defeat Jennifer's paternity claim by invoking section 621's conclusive presumption that Jennifer, conceived while Catherine was cohabiting with her husband Gregory, is a child of that marriage.[2] Section 621, subdivision (a) provides, "Except as provided in subdivision (b), the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." Section 621, subdivisions (b) through (f) provide for rebutting the conclusive presumption by a noticed motion for blood tests brought by the presumed father or the mother within two years of the child's

[2]"It is well established that to invoke the presumption of paternity set forth in section 621 a husband and wife must be cohabiting when a child is conceived." (*City and County of San Francisco* v. *Strahlendorf* (1992) 7 Cal.App.4th 1911, 1914 [9 Cal.Rptr.2d 817].)

birth.[3] The trial court refused to apply the presumption and declared Leslie to be Jennifer's legal father. Leslie contends that in so doing the trial court violated his due process rights. We disagree.

 Although the presumption contained in section 621 is "conclusive," courts have refused to apply it when its underlying policies are not furthered. (*Michelle W.* v. *Ronald W.* (1985) 39 Cal.3d 354 [216 Cal.Rptr. 748, 703 P.2d 88]; *In re Lisa R.* (1975) 13 Cal.3d 636 [119 Cal.Rptr. 475, 532 P.2d 123]; *In re Melissa G.* (1989) 213 Cal.App.3d 1082 [261 Cal.Rptr. 894].) Traditionally, it was stated that the presumption was designed to preserve the integrity of the family unit, protect children from the legal and social stigma of illegitimacy, and promote individual rather than state responsibility for child support.[4] (*Michael M.* v. *Giovanna F.* (1992) 5 Cal.App.4th 1272, 1282-1283 [7 Cal.Rptr.2d 460]; *In re Marriage of B.* (1981) 124 Cal.App.3d 524, 529-530 [177 Cal.Rptr. 429].) None of these policies would be furthered by application of the presumption to the facts at hand and the trial court properly refused to apply it.

We begin by noting that the facts of this case are unlike those of any case relied upon by Leslie. In the cases cited, the question of a due process violation arises when a putative father is told he has *no right* to participate in his child's life, typically because the child has a "presumed" father and lives in a family unit where husband and wife wish to raise the child as their own. In those cases the application of the presumption does not deny a putative father due process because the policies behind the presumption are significantly furthered. (See *Michael H.* v. *Gerald D.* (1989) 491 U.S. 110 [105 L.Ed.2d 91, 109 S.Ct. 2333] (plur. opn. of Scalia, J.); *Michelle W.* v. *Ronald W., supra,* 39 Cal.3d 354.) That is not the case here. Leslie seeks avoidance of participation rather than involvement. He contends that section 621 *protects him* from assuming any responsibility for a child he fathered. As we shall explain, the presumption cannot be applied for that purpose.

---

[3]Leslie criticizes Catherine's failure to follow the procedure set out by section 621 for rebutting the presumption. Because we conclude the presumption does not apply under these circumstances, his complaint need not be reached. However, we note that section 621, subdivisions (b) through (f) were added by the 1980 and 1981 amendments to section 621. (See Stats. 1980, ch. 1310, § 1, p. 4433; Stats. 1981, ch. 1180, § 1, p. 4761.) Prior to those amendments there was no statutorily prescribed method of rebutting the presumption. Since Jennifer was already three years old when the statute was amended, Catherine could not have invoked its motion procedure. Furthermore, the mother may invoke the motion procedure only if "the child's biological father has filed an affidavit with the court acknowledging paternity of the child." (§ 621, subd. (d).) Here, Leslie challenged paternity.

[4]Since the passage of the Uniform Parentage Act and its abolition of any incidents of illegitimacy, the "stigma" of illegitimacy should not be considered in determining the constitutionality of applying the presumption. (*Michelle W.* v. *Ronald W., supra,* 39 Cal.3d at p. 362, fn. 5.)

In *In re Lisa R.*, *supra*, 13 Cal.3d 636 the California Supreme Court developed a balancing test to determine whether applying the presumption violated the due process rights of a putative father wishing to rebut it. Logic dictates the same test should apply to determine whether *not* applying the presumption violates the putative father's due process rights. *Lisa R.* requires a case-by-case weighing of the competing private and state interests. (*Id.* at p. 648.) In *Lisa R.* the child's putative father, as listed on her birth certificate, sought to establish his paternity in a dependency proceeding. At the time of the hearing the child's mother and the mother's husband were deceased. (*Id.* at pp. 640-642.) In applying the balancing test the court found no countervailing state interest warranted the application of the presumption under the circumstances. "Although a state has a legitimate interest in promoting marriage, and in furtherance of that policy of not impugning a family unit [citation], that policy cannot be served when the family unit has been dissolved as here by the death not only of the mother but of the presumed father." (*Id.* at p. 650.)

Subsequent cases have continued to apply the *Lisa R.* balancing test. In *Estate of Cornelious* (1984) 35 Cal.3d 461 [198 Cal.Rptr. 543, 674 P.2d 245] a daughter's purely financial private interest in inheriting from her natural father was outweighed by the state's interest in presuming her legitimacy to a father who had reared and supported her for 27 years up to the time of his death. (*Id.* at p. 467.) Similarly, *Michelle W.* v. *Ronald W.*, *supra*, 39 Cal.3d 354 found the public interest in promoting familial stability and the welfare of the child outweighed the biological father's interest in establishing paternity. (*Id.* at pp. 360-363.) "[W]e have declined to interpret section 621 as an absolute bar to all suits to establish paternity by either the putative father or the presumed legitimate child. Rather, we have applied the [*Lisa R.*] balancing test . . . ." (39 Cal.3d at p. 365.)

Leslie relies heavily on *Michael H.* v. *Gerald D.*, *supra*, 491 U.S. 110 for his proposition that the court *must* apply the presumption and its failure to do so denied him due process. Leslie not only misconstrues the case, but he fails to comprehend that the presumption was never intended as a financial prophylactic for men who have affairs with married women.

In *Michael H.* putative father Michael filed an action to establish the paternity of a child born into an existing marriage. Blood tests showed a 98.07 percent probability that Michael was the child's father. The husband was named father on the birth certificate and held the child out as his own. At various times over a three-year period the mother and the child lived with Michael interspersed with reconciliations with the husband. The mother and the husband eventually permanently reconciled and desired to raise the child

with the two other children subsequently born into the marriage. (*Michael H. v. Gerald D., supra,* 491 U.S. at p. 115 [105 L.Ed.2d at pp. 100-101].)

The trial court applied the section 621 presumption and granted summary judgment in favor of the husband. (491 U.S. at p. 115 [105 L.Ed.2d at pp. 100-101].) The judgment was affirmed by the California Court of Appeal and by a divided United States Supreme Court. The court, in its plurality opinion, held that where a child is conceived and born into an extant marital family it is not unconstitutional for the state to give categorical preference to the husband over the putative father. The presumption is "based upon a determination by the Legislature as a matter of overriding social policy, that given a certain relationship between the husband and wife, the husband is to be held responsible for the child, and that the integrity of the family unit should not be impugned." (491 U.S. at pp. 119-120 [105 L.Ed.2d at pp. 103-104], internal quotation marks omitted.)

The plurality opinion was expressly limited to the facts of the case. "We limit our pronouncement to the relevant facts of this case because it is at least possible that our traditions lead to a different conclusion with regard to adulterous fathering of a child whom the marital parents do not wish to raise as their own." (491 U.S. at p. 129, fn. 7 [105 L.Ed.2d at pp. 109-110].) In cases where the presumption is likely to be rebutted, those where husband and wife are no longer cohabiting, it is not very likely "that the paternity hearing will disrupt an otherwise harmonious and apparently exclusive marital relationship." (*Id.* at p. 120, fn. 1 [105 L.Ed.2d at pp. 103-104].)

Here, there is no marital union to disrupt. Catherine and Gregory's brief marriage ended well before Jennifer was born. The three never lived together as a family unit. Jennifer knows Gregory is not her father, and Gregory did not know about Jennifer until he was brought into this action, 13 years later.

Subsequent to *Michael H.* courts have continued to apply the *Lisa R.* balancing test. In *In re Melissa G., supra,* 213 Cal.App.3d 1082 a child was conceived during a marriage. The mother and her husband separated before the child's birth. The husband was listed as father on the child's birth certificate although the two had no relationship. The child lived with the mother, the putative father, and a sister born later to the mother and the putative father. When the mother was hospitalized for substance abuse, a dependency petition was filed. The trial court refused to admit any evidence of the putative father's paternity and declared the former husband to be the father. The appellate court applied the *Lisa R.* balancing test and found application of the presumption denied the putative father due process. "In this case, in which [the child] has no available mother, her presumed father

is a stranger to her, and her most important psychological relationship is to a sibling to whom she is presumed biologically unrelated, we conclude the statute's classification does not serve the interests it was designed to protect." (*Id.* at p. 1089.)

The trial court correctly applied the balancing test established by the California Supreme Court in *Lisa R.* and correctly determined applying the presumption here would lead to a ridiculous result. If Leslie prevailed Jennifer would be "given" a father whom she knows is not her natural father, to preserve the integrity of a family unit that never existed. Catherine, Gregory and Jennifer have never lived together as a family, they share no ties other than those that exist due to a long-ago failed marriage of brief duration. Contrary to Leslie's assertions, to apply the presumption will not remove "the stigma of illegitimacy" from Jennifer.[5] She knows Gregory is not her father. She has never been held out as his daughter. She believes Leslie is her father and blood tests have confirmed it. Finally, the state's interest in establishing a source of child support is completely served by declaring Leslie to be the legal father.

In contrast to how poorly the state's interests would be served in this case by the application of the presumption of paternity, Jennifer's interests are well served by avoiding the presumption. To name Leslie as her legal father entitles her to benefits she is currently unable to receive. She will be entitled to financial assistance from him and will finally have a legal as well as a biological father. While Leslie may suffer some financial hardship as a result of his being declared Jennifer's legal father, this is far outweighed by the benefits to her.

As so aptly stated by the learned trial judge, "[A]pplying the [presumption] leads to an absurd result that defies reason and common sense. To apply the [presumption] is to rely upon a fiction to establish a legal fact which we know to be untrue, in order to protect policies which in this case do not exist."

The judgment is affirmed.

Sills, P. J., and Crosby, J., concurred.

---

[5]See, *ante*, footnote 4.