[No. B146673. Second Dist., Div. Three. Nov. 19, 2001.]

In re KIANA A., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent, v.
MARIO A., Defendant and Appellant.

## COUNSEL

Tyna Thall Orren, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd W. Pellman, County Counsel, and Lois D. Timnick, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—In juvenile dependency proceedings, Mario A. and Kevin W. each petitioned the juvenile court to be declared the presumptive father of Kiana A. (May 1988). At the time of disposition, the juvenile court found in Kevin W.'s favor. Mario A. appeals. We affirm the juvenile court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

Kevin W. removed the minors Kiana A. and her half sibling, Mykea M. (June 1992), from their mother's home on August 30, 2000, after learning mother had been arrested. The minors came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) on September 7, 2000, when it was reported the minors had been the victims of general neglect by mother who sold drugs and permitted strangers to have sex in the home. The minors subsequently were declared wards of the court pursuant to Welfare and Institutions Code section 300 based on a petition

which, as sustained, alleged mother inappropriately disciplined the minors, Mykea M.'s father inappropriately touched Kiana A., mother has a history of drug abuse and Mykea M.'s father is currently incarcerated.

A children's social worker (CSW) interviewed the minors at Kevin W.'s home on September 12, 2000. Kiana A. reported she had been living with Kevin W., whom she referred to as her "daddy," and no longer wished to live with mother. DCFS detained the minors from Kevin W.'s home and placed them in foster care.

Kevin W. indicated he and Kiana A.'s mother lived together when mother became pregnant with Kiana A. Mother told Kevin W. he was the father. However, five months later, they separated and mother began to live with Mario A. Soon thereafter, mother denied Kevin W. was Kiana A.'s father, and mother has made conflicting statements regarding Kiana A.'s paternity over the years. Kevin W. indicated he "has always been a part of Kiana's life." The CSW reported Kiana A. did not acknowledge Mario A. as being her father and does not recall ever seeing Mario A., whereas Kevin W. has treated Kiana A. as his child and has indicated that, even if genetic testing proved he was not Kiana A.'s father, he would continue to treat her as his child.

At the detention hearing, counsel for Kiana A. asked the juvenile court to release Kiana A. to Kevin W. Kevin W. testified he had cohabited "off and on" with mother after Kiana A. was about four years of age and that Kiana A. has stayed at Kevin W.'s home for two or three months at a time and has a bed in the room shared by his girlfriend's two daughters. When mother was arrested, Kiana A. telephoned Kevin W. and said, "Daddy, come get me." Kevin W. thereafter enrolled the minors in school and transported Kiana A. to and from school every day. When asked if he had ever been convicted of a crime, Kevin W. indicated he had been convicted of grand theft auto in 1986 and had not been in trouble since then.

At the conclusion of Kevin W.'s testimony, the juvenile court ordered Kiana A. released to his custody and denied DCFS's request for genetic testing.[1]

The matter was recalled when mother appeared and the juvenile court received the results of a search of Kevin W.'s criminal history. Under cross-examination by county counsel, Kevin W. admitted he had been

---

[1] DCFS recommended foster care, opposed placement of Kiana A. with Kevin W. and requested genetic testing in the apparent hope it could eliminate Kevin W. as a presumptive father.

imprisoned in 1993 after violation of parole upon conviction of burglary and grand theft auto. Additionally, Kevin W. had a 1988 misdemeanor conviction of brandishing a weapon and had been arrested in 1997 after an argument with his girlfriend. The juvenile court found Kevin W. had a "much more extensive record" than he had admitted, rescinded its earlier placement order and ordered Kiana A. placed in foster care.

Prior to disposition, Mario A. sought to be declared Kiana A.'s presumptive father. Mario A. declared he and mother cohabited at about the time of Kiana A.'s conception, he is named as Kiana A.'s father on her birth certificate, he consented to the placement of his name on her birth certificate, he married mother on May 9, 1990, two years after Kiana A.'s birth, and they divorced on December 26, 1997. About the time of Kiana A.'s birth, Mario A. was arrested. He has been continuously incarcerated for the past 12 years and was scheduled to be released on parole in October of 2001. Mario A. told the CSW he wanted to do what he could for Kiana A., including accepting responsibility as her father. Mario A. indicated he has maintained contact with Kiana A. by writing and telephoning her.

Kiana A. filed a declaration in which she averred she has always thought of Kevin W. as her father. "He has been around my whole life and has always supported me. When I lived with my mom he would buy me things that I needed." Kevin W. helped Kiana A. enroll in school and met with her teachers. Prior to a juvenile court appearance in November of 2000, Kiana A. did not remember ever seeing Mario A. Kiana A. indicated Mario A. has written her that he is her father. However, Kiana A. stated, "Kevin is my real dad. He has always been there for me."

Prior to disposition, the juvenile court denied Kevin W.'s request for genetic testing. On December 12, 2000, the juvenile court found both Kevin W. and Mario A. qualified as Kiana A.'s presumed father but concluded Kevin W.'s presumption prevailed over Mario A.'s because Kiana A. had acknowledged Kevin W. as her father and Kevin W. had received Kiana A. into his home.

## CONTENTIONS

Mario A. contends he is Kiana A.'s presumptive father, Kevin W. does not qualify as a presumptive father and the juvenile court should have ordered genetic testing before it weighed the competing presumptions of paternity.

## DISCUSSION

1. *The Uniform Parentage Act.*

Before addressing Mario A.'s contentions, we review the relevant law. The Uniform Parentage Act (the Act), originally adopted as Civil Code

section 7000 et seq. and reenacted without substantive change as Family Code section 7600 et seq., establishes the framework by which California courts make paternity determinations.[2] It provides for conclusive and rebuttable presumptions of paternity.

a. *The conclusive presumption of section 7540.*

■ The "conclusive presumption," found in section 7540, states: "Except as provided in Section 7541 [providing for the use of blood tests], the child of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." Under section 7541, requests for blood tests to rebut the conclusive presumption of paternity must be made within two years of the child's birth and can only be made by the husband, the child, the mother or a "presumed father" as defined in sections 7611 and 7612.

The conclusive presumption of section 7540 is a social policy statement made by the Legislature to protect the integrity of the family unit. Due process challenges to the conclusive presumption that the husband is the father of a child conceived during the marriage have been rejected by both the California and United States Supreme Courts. (*Michael H. v. Gerald D.* (1989) 491 U.S. 110 [109 S.Ct. 2333, 105 L.Ed.2d 91]; *Michelle W. v. Ronald W.* (1985) 39 Cal.3d 354, 362-363 [216 Cal.Rptr. 748, 703 P.2d 88].) Thus, a biological father's desire to establish a personal relationship with a child, without more, is not a fundamental liberty interest protected by the due process clause. (*Michael H., supra,* 491 U.S. at pp. 124-127 [109 S.Ct. at pp. 2342-2344]; see also *Lehr v. Robertson* (1983) 463 U.S. 248, 259-260 [103 S.Ct. 2985, 2992, 77 L.Ed.2d 614].) Accordingly, the unwed biological father of a child conceived during and born into an existing marriage may be barred by the conclusive presumption from developing a relationship with the child against the married parent's wishes. (*Dawn D. v. Superior Court* (1998) 17 Cal.4th 932, 942 [72 Cal.Rptr.2d 871; 952 P.2d 1139]; *Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 239 [71 Cal.Rptr.2d 399]; *Miller v. Miller* (1998) 64 Cal.App.4th 111, 119-120 [74 Cal.Rptr.2d 797].)

However, the resolution of substantive due process attacks upon the conclusive presumption depends on the circumstances prevailing in each particular case. (*Dawn D. v. Superior Court, supra,* 17 Cal.4th at p. 938; *In re Lisa R.* (1975) 13 Cal.3d 636, 651, fn. 17 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017].) Where the Act unduly impinges a biological father's constitutional right to parent a child, we apply traditional substantive due process principles and balance the biological father's interest against those

---

[2]Subsequent unspecified statutory references are to the Family Code.

of the state. (*Michelle W. v. Ronald W., supra,* 39 Cal.3d at p. 360; *In re Lisa R., supra,* 13 Cal.3d at p. 648.) Thus, a court may refuse to apply the conclusive presumption when its underlying policies are not furthered. (*In re Lisa R., supra,* 13 Cal.3d 636, 650; *In re Melissa G.* (1989) 213 Cal.App.3d 1082, 1085-1086 [261 Cal.Rptr. 894]; *County of Orange v. Leslie B.* (1993) 14 Cal.App.4th 976, 980-983 [17 Cal.Rptr.2d 797]; *Comino v. Kelley* (1994) 25 Cal.App.4th 678, 683 [30 Cal.Rptr.2d 728].)

    b.   *Rebuttable presumptions of section 7611.*

In addition to the conclusive presumption, there are several rebuttable presumptions of paternity described in section 7611. As relevant here, these include where a man marries a child's mother after the child's birth and the man's name appears with his consent on the child's birth certificate (§ 7611, subd. (c)(1)), and/or where a man receives a child into his home and acknowledges the child as his natural child (§ 7611, subd. (d)). A presumption arising under section 7611 is a "rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence." (§ 7612, subd. (a).)

Although more than one individual may fulfill the criteria that give rise to a presumption of paternity, there can be only one presumed father. (*Brian C. v. Ginger K.* (2000) 77 Cal.App.4th 1198, 1223 [92 Cal.Rptr.2d 294].) Where the evidence shows that more than one man qualifies as a presumptive father, section 7612, subdivision (b), directs the trial court to weigh the competing presumptions. It states: "If two or more presumptions arise under Section 7611 which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls." (§ 7612, subd. (b).)

As with due process attacks upon the conclusive presumption, constitutional attacks upon the statutory limitations of presumptive father status involve a weighing process. In the leading case of *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 [4 Cal.Rptr.2d 615, 823 P.2d 1216], an unwed biological father who could not qualify as a presumptive father under section 7611, subdivision (d), because he was prevented by the mother from receiving the child into his home and establishing a relationship with the child, nonetheless had parental rights worthy of protection where he had taken significant steps in the earliest stages of the child's life to fulfill a parental role. Thus, the child could not be placed for adoption until the biological father had consented or been found unfit. (*Adoption of Kelsey S., supra,* 1 Cal.4th at pp. 849-851.)

### c. *Biological paternity.*

Finally, there is a biological father. "A biological or natural father is one whose biological paternity has been established, but who has not achieved presumed father status . . . . [Citations.] A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an 'alleged' father. [Citation.]" (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15 [24 Cal.Rptr.2d 751, 862 P.2d 751].) "[O]nly a presumed, not a mere biological, father is a 'parent' entitled to receive reunification services . . . ." (*Id.* at p. 451; *In re Sarah C.* (1992) 8 Cal.App.4th 964, 974-975 [11 Cal.Rptr.2d 414].)

With this overview in mind, we turn to Mario A.'s contentions.

### 2. *No abuse of discretion appears in the juvenile court's disposition order.*

#### a. *Kevin W. and Mario A. both qualify as Kiana A.'s presumptive father.*

■ Mario A. first claims he is a presumptive father of Kiana A. under section 7611, subdivision (c)(1), because his name appears on her birth certificate and he married Kiana A.'s mother. The juvenile court agreed, and we concur, the evidence demonstrated a rebuttable presumption under section 7611, subdivision (c)(1), that Mario A. was Kiana A.'s presumed father.

Mario A. next contends Kevin W. cannot be Kiana A.'s presumed father because Kevin W. failed to make a full and prompt commitment to his parental responsibilities. (*Adoption of Kelsey S., supra,* 1 Cal.4th at pp. 829-830, 849; *In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1654-1655 [56 Cal.Rptr.2d 524]; *In re Sarah C., supra,* 8 Cal.App.4th at pp. 972-973.) Mario A. asserts that merely purchasing clothing, providing Kiana A. with food and shelter, and enrolling her in school is insufficient to give rise to a presumption of paternity. Mario A. also argues Kevin W. failed to take formal legal action to claim paternity and failed to protect Kiana A. from neglect by mother and sexual molestation by Mykea M.'s father. Mario A. concludes Kevin W. cannot qualify as a presumptive father.

Contrary to Mario A.'s assertion, the evidence demonstrated a rebuttable presumption that Kevin W. was Kiana A.'s presumed father under section 7611, subdivision (d). Kevin W. took Kiana A. into his home, held her out as his natural child, provided necessities of life and acted toward her as a

parent, enrolling her in school, meeting with her teachers and transporting her to and from school on a daily basis. Thus, the juvenile court's finding that Kevin W. also was entitled to a rebuttable presumption of paternity is supported by the evidence. Although Kevin W. might have more actively protected Kiana A. from neglect, the juvenile court obviously concluded Kevin W.'s failure in this regard was insufficient to deny Kevin W. entitlement to a rebuttable presumption of paternity in the first instance.

The cases cited by Mario A. do not require a different result. *Adoption of Kelsey S., supra,* 1 Cal.4th 816, addressed whether the Act could be constitutionally applied to prevent an unwed biological father, who could not qualify under the statute as a presumptive father, from assuming parental responsibility with respect to a child. *Kelsey S.* does not apply here because Kevin W. actually received Kiana A. into his home and qualified as a presumptive father under section 7611, subdivision (d). He need not also qualify as a *Kelsey S.* father.

The other cases cited by Mario A., *In re Spencer W., supra,* 48 Cal.App.4th at pages 1654-1655, and *In re Sarah C., supra,* 8 Cal.App.4th at pages 972-973, both address fathers who failed to qualify as presumptive fathers under section 7611, subdivision (d), because they took insufficient steps to receive the child in issue into their homes. In *In re Spencer W.,* the alleged father failed to support the child, only lived with the child's mother while the mother supported the alleged father and demonstrated no interest in the child while he was in jail. In *In re Sarah C., supra,* 8 Cal.App.4th at pages 972-973, a sailor spent one day looking for a child after his release from the Navy in San Diego before moving to Massachusetts. Here, the juvenile court found, and the evidence showed, Kevin W. actually received Kiana A. into his home and held her out as his natural child. The fact other cases have reached contrary results on different facts is irrelevant.

b. *Weighing the competing presumptions under section 7612, subdivision (b).*

Having concluded both Kevin W. and Mario A. qualified as presumptive fathers, the juvenile court properly proceeded to weigh the competing presumptions. The result of this weighing process would appear to be obvious. Mario A. was incarcerated at about the time of Kiana A.'s birth, has remained incarcerated continuously thereafter and was in prison for the entirety of his marriage to mother. Kiana A. is unaware of ever having seen Mario A. prior to his appearance in these proceedings and declared she does not acknowledge him as her father.

Kevin W., on the other hand, has taken Kiana A. into his home, has cared for her needs, has held her out as his child and signed a declaration of

paternity in juvenile court on September 19, 2000. Indeed, the juvenile court very nearly released Kiana A. to Kevin W.'s custody at the detention hearing. The evidence clearly supports the juvenile court's conclusion that Kevin W.'s presumption was entitled to greater weight than Mario A.'s.

### 3. *Mario A. failed to request genetic testing below and the juvenile court had no sua sponte obligation to order it.*

#### a. *Mario A. waived the right to request genetic testing.*

Mario A. next claims the juvenile court should have granted requests for genetic testing made by DCFS and Kevin W. before it commenced the weighing process of section 7612, subdivision (b), because one of the competing presumptions would have been rebutted based upon the results of the testing. (*Brian C. v. Ginger K., supra,* 77 Cal.App.4th 1198; *In re Olivia H.* (1987) 196 Cal.App.3d 325, 330 [241 Cal.Rptr. 792]; § 7551.)[3]

However, Mario A. failed to seek genetic testing in the juvenile court. Indeed, prior to raising this claim of error on appeal, Mario A. never previously sought a determination of Kiana A.'s biological paternity. Fair play dictates that Mario A. cannot wait until his petition for presumptive father status has been denied in the juvenile court, then request genetic testing for the first time on appeal. It would be inequitable to permit Mario A. to advance this untimely claim at this point in the proceedings. (See *People v. Saunders* (1993) 5 Cal.4th 580, 589-590 [20 Cal.Rptr.2d 638, 853 P.2d 1093].)

#### b. *Even assuming for the sake of discussion that Mario A. could raise the issue, a different result would not have obtained.*

##### (1) *Biological paternity not necessarily determinative.*

Even if Mario A. could raise the issue at this juncture, it would fail because biological paternity by a competing presumptive father does not necessarily defeat a nonbiological father's presumption of paternity. Indeed, section 7612, subdivision (a) states a presumption of paternity "*may* be rebutted *in an appropriate action only* by clear and convincing evidence." (Italics added.) Thus, although the results of genetic testing constitute clear and convincing evidence, it does not follow that such evidence will rebut the

---

[3]Section 7551 provides: "In a civil action or proceeding in which paternity is a relevant fact, the court may upon its own initiative or upon suggestion made by or on behalf of any person who is involved, and shall upon motion of any party to the action or proceeding made at a time so as not to delay the proceedings unduly, order the mother, child, and alleged father to submit to genetic tests. . . ."

presumption in every case. Rather, the statute seeks to protect presumptions of paternity, once they have arisen, from being set aside except upon clear and convincing evidence and only in an appropriate case.

Thus, *Steven W. v. Matthew S.* (1995) 33 Cal.App.4th 1108 [39 Cal.Rptr.2d 535] upheld a finding of presumptive father status in favor of a man who had held a child out as his natural child even where the competing presumptive father was the child's biological father. Thus, as between two men, both of whom qualify as presumptive fathers, biological paternity does not necessarily determine which presumption will prevail under section 7612. " ' " '[I]n the case of an older child [over two years of age] the familial relationship between the child and the man purporting to be the child's father is considerably more palpable than the biological relationship of actual paternity. A man who has lived with a child, treating it as his son or daughter, has developed a relationship with the child that should not be lightly dissolved . . . . This social relationship is much more important, to the child at least, than a biological relationship of actual paternity. . . .' " ' " (*Steven W. v. Matthew S., supra,* 33 Cal.App.4th at pp. 1116-1117.) This aptly describes the situation here.

### (2) *The cases cited by Mario A. do not require a different result.*

In *In re Olivia H., supra,* 196 Cal.App.3d 325, the defendant, Gregory P., claimed entitlement to presumptive father status because he signed the six-month-old child's birth certificate, thereby openly acknowledging her as his child, and was also willing to take the child into his home. However, Gregory P. had never lived with the child's mother, had a history of assaultive behavior and drug abuse, and he had been shown not to be the biological father of the child. *Olivia H.* concluded that, "[u]nder such circumstances, defendant was precluded from establishing presumptive parenthood . . . ." (*Id.* at p. 330.)

Although *Olivia H.* noted the presumption would be rebutted under what is now section 7612, subdivision (c), which provides a presumption arising under section 7611 " 'is rebutted by a court decree establishing paternity of the child by another man,' " there was no court decree establishing paternity by another man, only a blood test showing Gregory P. was not the biological father. (*In re Olivia H., supra,* 196 Cal.App.3d at p. 330; § 7612, subd. (c).) Thus, *Olivia H.* held Gregory P. was not a presumed father because he did not qualify under the statute and another man had been shown to be the biological father. It did not hold that a showing of biological paternity by another man, standing alone, rebuts a presumption of paternity.

In *Brian C. v. Ginger K., supra,* 77 Cal.App.4th 1198, Brian and Ginger conceived Kennedy in January of 1995 while Ginger continued to cohabit

with her husband, William. In March, Ginger left William and moved into an apartment she rented with Brian. Kennedy was born in October 1995. Brian was present at Kennedy's birth and his name appears as her father on her birth certificate. Ginger and Brian separated in November 1996, but Brian continued to see Kennedy each day and Brian had custody on weekends until May 1997, when Ginger terminated contact between Brian and Kennedy because Ginger and William were reconciling. Brian filed suit and requested genetic testing but no ruling was made on the request. The trial court concluded the marital cohabitation of Ginger and William at the time of Kennedy's conception triggered the conclusive presumption of paternity of section 7540 and granted summary judgment in Ginger's favor. On appeal *Brian C.* found that, because Brian qualified as a presumptive father, he had standing to attack the conclusive presumption and noted, in a footnote, that, on remand, genetic testing "will certainly constitute clear and convincing evidence rebutting any of the presumptions that might favor either Brian or William." (*Brian C. v. Ginger K., supra,* 77 Cal.App.4th at p. 1222, fn. 20.)

Based on this footnote, Mario A. claims *Brian C.* impliedly recognized that biological paternity necessarily will rebut a presumption of paternity. However, in *Brian C.,* the child was an infant, and both of the men competing to be declared the presumed father had received the child into their homes and had acted as her parent. Each man's ability to continue the parental relationship was dependent upon Ginger's apparently alternating preference for one man or the other. Thus, the rights of the competing men, vis-à-vis the child, were in near equipoise. In such a circumstance, where the weight of the interests of the competing presumptive fathers are in relatively equal balance, biological paternity might properly be relied upon to determine which presumption carried more weight.

This is not necessarily so where the child, like Kiana A., is 13 years of age. At this point in Kiana A.'s life, a parental relationship has developed between her and Kevin W. Kiana A. has no comparable relationship with Mario A. and never has. "The courts have repeatedly held, in applying paternity presumptions, that the extant father-child relationship is to be preserved at the cost of biological ties. (*Michelle W.* v. *Ronald W., supra,* [39 Cal.3d] at p. 363 [alleged biological father's abstract interest in establishing paternity not as weighty as the state's interest in familial stability and the welfare of the child]; *Comino* v. *Kelley[, supra,]* 25 Cal.App.4th [at p.] 684 . . . [court refused to apply conclusive presumption . . . to deny the child the only father she had ever known].)" (*Steven W. v. Matthew S., supra,* 33 Cal.App.4th at p. 1116; see *In re Bridget R.* (1996) 41 Cal.App.4th 1483 [49 Cal.Rptr.2d 507] [right of Indian tribe to control adoptive placement of children of Indian heritage must be balanced against the rights of the children who had been in secure adoptive homes all their lives].)

Given the strong public policy in favor of preserving the parental relationship between Kevin W. and Kiana A., the juvenile court properly could have weighed the competing presumptions without regard for biological paternity. Indeed, the juvenile court's refusal to order such testing clearly indicates the results would have been irrelevant to the outcome.

(3) *Conclusion.*

Even had Mario A. been shown to be Kiana A.'s biological father, the result of the juvenile court's weighing process under section 7612, subdivision (b) would have been the same. Thus, the juvenile court committed no reversible error in failing to order genetic testing sua sponte.

4. *Mario A. has no overriding due process right to parent Kiana A.*

In the reply brief, Mario A. asserts for the first time, that if a *Kelsey S.* father (*Adoption of Kelsey S., supra,* 1 Cal.4th 816) is entitled to a finding of unfitness prior to termination of parental rights, then Mario A., who qualifies as a presumptive father, should be accorded similar due process. However, Mario A. has been accorded due process through the statutory procedure which resulted in the juvenile court's determination his presumption was entitled to less weight than Kevin W.'s. Further, because Mario A. has not shown a parental relationship between himself and Kiana A. that would outweigh the state's interest in fostering reunification of Kiana A. with Kevin W., the presumed father most likely to reunify successfully with her, Mario A.'s analogy to *Adoption of Kelsey S.* is inapt.

DISPOSITION

The order is affirmed.

Kitching, J., and Aldrich, J., concurred.