Filed 6/20/13  A.H. v. Super. Ct. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| A.H., <br><br>     Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF MARIN COUNTY, <br><br>     Respondent; <br><br> MARIN COUNTY HEALTH & HUMAN SERVICES et al., <br><br>     Real Parties in Interest. | A138389 <br><br> (Marin County <br> Super. Ct. No. JV25733A) |

By way of this writ proceeding, A.H. challenges the dependency court's jurisdiction and disposition orders, and its order setting a selection and implementation hearing pursuant to Welfare and Institutions Code section 366.26.[1]  Specifically, A.H. challenges the court's ruling he is the "biological," not the "presumed", father of M.H. and contends the conclusive presumption of paternity set forth in Family Code section 7540 applies.  The County of Marin does not dispute A.H. made the requisite showing to trigger the presumption—that is, that when M.H. was born, her mother and A.H. were married and cohabitating, and A.H. was not then impotent or sterile.  (Fam. Code, § 7540.)  The county maintains, however, the court properly found, as a matter of public policy, the presumption should not apply in this case.

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

While we agree with the county the record in this case raises grave concerns about the safety of M.H. if custody is awarded to A.H., and we have serious doubts reunification services would be utilized by A.H. and, even if they were, they would repair what appears to be a non-existent familial relationship between A.H. and his daughter, these concerns should have been addressed in the context of determining custody and the provision of reunification services, not through the expediency of disregarding the conclusive presumption set forth in Family Code section 7540. We therefore grant the writ petition in part, order the court's disposition order and order declaring A.H. to be only a "biological" father vacated, and remand for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

Because this writ proceeding turns on a single question, whether the conclusive presumption set forth in Family Code section 7540 applies, we need not and do not discuss the facts of the underlying dependency proceeding at length.

M.H. was born in Marin County in January 1997. Soon thereafter, her parents took her to Bahrain. Her mother died when she was four months old. A.H. asked his parents to care for M.H. They agreed to do so, and returned with M.H. to Marin County and acted as her parents. A.H. did not return, and during M.H.'s childhood had contact with her only rarely. As of the time of the detention hearing, M.H. was 16 years old and had not seen A.H. for seven years. A.H. never expressed any interest in knowing M.H., did not telephone her or send her birthday cards, and did not contribute financially to her support.

As M.H. grew older, there was significant conflict between her and her grandparents. This ultimately resulted in her half brother being appointed her guardian. Conflict continued in her brother's household, leading to his refusal to continue the guardianship and triggering the underlying dependency proceedings.

On February 13, 2013,[2] the county filed a section 300 dependency petition alleging, inter alia, failure or inability of a parent or guardian to supervise or protect M.H.

---

[2] All further date references are to the year 2013.

2

Because the guardianship had not yet been terminated, the legal guardian, and not A.H., addressed the allegations of the petition at the detention hearing on February 14, waived rights and did not dispute that a prima facie showing had been made for detention and placement outside the home of the guardian. The court ordered M.H. detained and placed under the care of the county child and family services agency. Counsel for A.H. also appeared at the hearing and claimed presumed father status under Family Code section 7540. The court took the issue under submission.

Five days later, on February 19, the court issued an order denying A.H.'s request to be deemed the presumed father. Citing both Family Code sections 7540 and 7611, subdivision (a), it recounted the lack of A.H.'s interest in and contact with M.H. It also referenced the report of the social worker that in a telephone conversation A.H. stated that he was very upset with M.H., that she needed to be sent to Bahrain, that the United States should have no further involvement with her, that he would get her to behave and, if she failed to do so, he had the right to disown her. The court concluded that while A.H. may be the biological father, he "has not yet made much of a commitment to his parental responsibilities for the minor" and therefore had "not met the requisite burden of proof that he is the presumed father.

On March 7, A.H. moved for reconsideration of his status, asserting the trial court had erred in refusing to heed the conclusive presumption set forth in Family Code section 7540. He attached a copy of M.H.'s birth certificate, showing him to be the father.

The legal guardian appeared at the jurisdiction hearing on March 11, again waived rights and submitted to the jurisdiction of the court. On the basis of the jurisdiction report filed by the county, the court sustained the "g-1" allegation of the petition.[3] The report included a history of 10 prior referrals regarding the family. These included two

_____

[3] Because the legal guardianship was still in place and the guardian responded to the jurisdictional allegations and submitted to the jurisdiction of the court, A.H. has no standing to challenge this order, and we deny his writ petition to the extent it purports to do so.

reports (as to which an "inconclusive" determination was made) of severe abuse of M.H.'s younger half brother by A.H. while in Bahrain and Saudi Arabia, one report ("substantiated") of abuse of her older half brother by A.H., one report ("inconclusive") of emotional abuse and neglect of the younger half brother by the paternal grandmother that noted the brother was repatriated to the United States after severe abuse by A.H. in Bahrain, and one report ("inconclusive") of emotional abuse of M.H. by the paternal grandparents, and several reports ("inconclusive," "substantiated," and "evaluated out") of general neglect of M.H. by her older half brother during the guardianship. M.H.'s older half brother and then legal guardian also told the social worker that for seven years he did not speak to his father and had not wanted anything to do with him. He reported abuse, including being made to "sign a contract" he would "not touch his father or anything in his father's home and was then made to live in a guest house where he had very little to eat." He also reported severe abuse of his younger brother. He contacted his father to advise him of the guardianship and refused to send M.H. to him in Bahrain " 'because of what happened to me.' " As for A.H.'s motion for reconsideration of the court's ruling on his fatherhood status, the court found proper notice had not been given, and continued the matter to the next hearing.

Two weeks later, on March 29, A.H. filed a "supplemental motion" for a determination of paternity under Family Code section 7540.

On April 2, the county filed a disposition report, again reciting the prior child welfare history, including that the U.S. Embassy had become involved with the abuse of M.H.'s younger half brother and A.H. had shown " 'little or no remorse for the beatings and admitted that such beatings have occurred on multiple occasions.' " M.H.'s older half brother also sought help from the embassy, stating he had been "put out" of the family home two weeks earlier and had not eaten or slept in three days. A.H. told embassy personnel the son was no longer welcome in his home and he considered him to be the embassy's responsibility. The report also recounted A.H.'s conversation with the social worker that M.H. is a " 'disturbed person and a trouble maker,' " that she should be sent to Bahrain, and " 'we can write her off and let her go to hell' " if she continues to

misbehave. If M.H. " 'doesn't want to listen we have full right to disown her so she does not ruin the [family] name.' " The report summarized: "[A.H.] has an extensive history of severe physical abuse and neglect of [M.H.'s] older siblings. He has not shown any interest in raising any of his children long-term and has not made any effort to have a relationship with [M.H.]" The report therefore concluded, "it is not in [M.H.'s] best interest to be sent to live with her father."

By the time of the disposition hearing, on April 3, the guardianship had been terminated. Accordingly, the court first considered A.H.'s pending motions regarding his fatherhood status. The court heard argument, including by counsel representing M.H., who vigorously opposed A.H. attaining presumed father status. The court took the issue under submission and continued the hearing.

At the continued hearing on April 8, the court affirmed its prior decision that A.H. was only the "biological" father and was not entitled to "presumed" father status. Stating it had reviewed the history of the family relationship as set forth in the reports, the court "[did] not find it in the best interests of the minor that he be determined to be the presumed father with custody of [M.H.]" It found, "her safety and well-being will be jeopardized by such a Court order."

The court then proceeded with the disposition hearing, approved nonparent placement and set the matter for a selection and implementation hearing on July 29.

## DISCUSSION

This dependency proceeding illustrates the potential tension between the goals and objectives of the juvenile dependency scheme and those of the paternity statutes. " 'The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time.' [Citation.] The underlying purpose of dependency law is to protect the welfare and best interests of the child." (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 597.) The paternity statutes, in turn, reflect the historic view the family unit is vital to societal health, and children born during a marriage should be presumed legitimate offspring of the union. (*In re*

5

*Kiana A.* (2001) 93 Cal.App.4th 1109, 1114 (*Kiana A.*); see also *Dawn D. v. Superior Court* (1998) 17 Cal.4th 932, 945–946 (J. Kennard, concurring); *In re Lisa R.* (1975) 13 Cal.3d 636, 649–650 (*In re Lisa R.*).)

As we have discussed, the record here indicates significant risk to M.H.'s health and wellbeing if the conclusive presumption of paternity set forth in Family Code section 7540 is recognized and that were to lead to custody by A.H. It further reflects the family unit disintegrated years ago, so the family-preservation policy the paternity presumption seeks to advance is non-existent.

The county is correct that courts have, in some cases, refused to apply the conclusive presumption set forth in Family Code section 7540. These cases, however, are grounded on the theory the presumption must give way to paramount constitutional due process rights, generally the right of a "biological" father to parent his child. (*See, e.g., Lisa R., supra,* 13 Cal.3d at p. 640 [holding "that under the due process clause of the Fourteenth Amendment . . . appellant does have standing to offer evidence that he is the natural father of the minor child"]; *Kiana A., supra,* 93 Cal.App.4th at pp. 1114–1115 ["Where the [paternity statute] unduly impinges a biological father's constitutional right to parent a child, we apply traditional substantive due process principles and balance the biological father's interest against those of the state. [Citations.] Thus, a court may refuse to apply the conclusive presumption when its underlying policies are not furthered."]; *Comino v. Kelley* (1994) 25 Cal.App.4th 678 [conclusive presumption not applied to bar biological father, who had extensive relationship with child in early years before mother restricted access, from seeking custody rights].)

Even then, the courts have not readily disregarded the presumption. "[W]hen there is no existing relationship between the claimed biological father and the child, courts must defer to legislative choices reflected in paternity statutes." (*Lisa I. v. Superior Court* (2005) 133 Cal.App.4th 605, 620 (*Lisa I.*).)

In *County of Orange v. Leslie B.* (1993) 14 Cal.App.4th 976, which the county cites several times, the district attorney filed a complaint against two men to determine paternity for child support purposes. While neither gentleman was seeking to assume

parental obligations, and thus there was no contest between them as to parental status, the case nevertheless involved the resolution of parental status as between a former husband subject to the statutory presumption and the biological father. The Court of Appeal concluded failure to apply the presumption did not impair the biological father's due process rights, and affirmed the trial court's refusal to allow the biological father to avoid support obligations to his child by raising the statutory presumption. (*Id.* at pp. 979–982.)

The county has not cited any case in which there was no competing claim of entitlement to parental status and the conclusive statutory presumption was nevertheless disregarded. While we appreciate that the historic underpinnings of the presumption of paternity set forth in Family Code section 7540 may not coincide with the state of the modern family, it is clear the courts have carefully limited the circumstances in which this "conclusive" presumption can be disregarded by the courts. Moreover, were that not the case and the courts could freely determine on a case by case basis that "public policy" weighed against application of the presumption, the declared conclusiveness of the statute would be severely undermined. That goes beyond the proper role of the courts. (Cf. *Lisa I., supra,* 133 Cal.App.4th at p. 620 [where no cognizable due process interest, courts "must defer to legislative choices reflected in paternity statutes"].)

We therefore conclude the dependency court erred in disregarding the conclusive presumption set forth in Family Code section 7540 and denying A.H. presumed father status and deeming him, on ostensible public policy grounds, only a biological father.

This does not mean, however, that A.H. is entitled to custody, in Bahrain, of M.H. A.H. is a "noncustodial" parent, and the court must consider whether placement with him "would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) At the continued jurisdiction hearing, the court made such a finding on the record.[4] And certainly the record before the court (the county jurisdiction

---

[4] Any finding made under section 361.2, subdivision (a), must be "either in writing or on the record" and state "the basis for" the court's determination. (§ 361.2,

7

and disposition reports) supported such a finding on the basis of clear and convincing evidence.  However, at that point, the court had ruled (a second time) that A.H. was only a biological father.  Consequently, he did not have an opportunity to participate substantively in the proceedings and attempt to rebut the county reports that appear to make very clear his custody of M.H. in Bahrain would be perilous to her safety, protection, or physical or emotional wellbeing.  We therefore have no choice but to reverse and remand the matter for a hearing under section 361.2, subdivision (a).

We note that section 361.2 is not a "removal" statute.  "[R]ather it is one of the statutes that guides the court and the Agency in determining the child's placement after removal from the custodial parent pursuant to section 361.  Under section 361, the court removes children from the physical custodial parent.  (See *In re Terry H.* (1994) 27 Cal.App.4th 1847, 1856 . . . .)[5]  Because [appellant] was a noncustodial parent, the court did not and was not required to remove the children from him under any statute.  Once removal from the custodial parent under section 361 has occurred, section 361.2 requires the court to evaluate placement with the noncustodial parent based on detriment."  (*Luke M., supra*, 107 Cal.App.4th at pp. 1422–1423.)  Moreover, "[a] detriment evaluation requires that the court weigh all relevant factors to determine if the child will suffer net harm."  (*Id.* at p. 1425.)  Thus, while "a jurisdictional finding is predicated on parental conduct, a detriment finding for purposes of deciding placement with a noncustodial, nonoffending parent need not be."  (*Ibid.*)  The court must also keep in mind "the fundamental premise that the underlying purpose of dependency law is to protect the welfare and best interests of the dependent child" and "the purpose of any dependency hearing is to determine and protect the child's best interests."  (*Id.* at pp. 1424–1425.)

---

subd. (c).)  Any such finding must also be made on the basis of clear and convincing evidence.  (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426 (*Luke M.*).)

[5]  Superseded by statute on another ground as stated in *In re Nolan W.* (2009) 45 Cal.4th 1217, 1233–1234, footnote 7.

As for reunification services, the record before us does not indicate whether M.H. is even seeking such services, let alone what the court may determine in this regard. (§§ 361.2, subd. (b)(3), 361.5, subd. (b); see *In re Adrianna P.*(2008) 166 Cal.App.4th 44, 55–59 [applying section 361.5, subdivision (b), to noncustodial parent who sought, but was denied, custody].)

## DISPOSITION

We deny A.H.'s writ petition to the extent it challenges the court's jurisdictional order. We otherwise grant the petition, order the court's disposition order and order deeming A.H. only a biological father vacated, and remand for a hearing under section 361.2 and new disposition hearing.

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Sepulveda, J.[*]

_____

[*] Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.